IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                        )
                              )
PARKER CHANDLER HOMES, INC.   )    Chapter 7
        Debtor                )    Case No. 09-90334-MHM
                              )
BRANCH BANKING AND TRUST      )
COMPANY                       )
        Movant                )
                              )
vs.                           )
                              )
PARKER CHANDLER HOMES, INC.   )
        Respondent            )

NOTICE OF HEARING

Branch Banking and Trust Company has filed papers with the
court for relief from the automatic bankruptcy stay.

**<u>Your rights may be affected</u>.  You should read these papers
carefully and discuss them with your attorney, if you have one in
this bankruptcy case.  (If you do not have an attorney, you may
wish to consult one.)**

If you not want the court to grant a motion for relief or if
you want the court to consider your views on the Motion for
Relief from Automatic Stay.

Attend the hearing scheduled to be held on January 26, 2010,
at 2:15 p.m. at the U.S. Courthouse, Courtroom 1204, 75 Spring
Street, S.W., Atlanta, Georgia.

If you or your attorney do not takes steps, the court may
decide that you do not oppose the relief sought in the Motion for
Relief from Automatic Stay and may enter an order granting
relief.

Date: 12/24/09                _____
                              Kathleen Horne
                              Georgia Bar No. 367456
                              Attorney for Movant

INGLESBY, FALLIGANT, HORNE, COURINGTON & CHISHOLM, P.C.
Post Office Box 1368
Savannah, Georgia   31402-1368
(912) 232-7000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PARKER CHANDLER HOMES, INC. | ) | Chapter 7 |
| Debtor | ) | Case No. 09-90334-MHM |
| | ) | |
| BRANCH BANKING AND TRUST | ) | |
| COMPANY | ) | |
| Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PARKER CHANDLER HOMES, INC. | ) | |
| Respondent | ) | |

MOTION FOR RELIEF FROM AUTOMATIC STAY
AND WAIVER OF RIGHT TO HAVE HEARING WITHIN
THIRTY (30) DAYS

Now comes the Movant, Branch Banking and Trust Company ("BB&T"), a secured creditor of the Debtor, Parker Chandler Homes, Inc.(the "Debtor"), and respectfully shows the Court the following:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334 and 11 U.S.C. §362.

2.

BB&T hereby waives its right to have a hearing on the Motion for Relief from Automatic Stay in the above-styled case within thirty (30) days pursuant to 11 U.S.C. 362(e).

3.

On or about March 29, 2006, Debtor executed a Revolving Promissory Note with the principal amount not to exceed $10,000,000("Note") in favor of BB&T.  A copy of the Note is attached hereto as Exhibit A.

4.

To secure the debt to BB&T, the Debtor executed and delivered a Deed to Secure Debt, Assignment and Security Agreement (the "Security Deed") which, as subsequently modified, granted BB&T a first priority interest on various parcels of real estate including:

Lot 25 Glenn Ivey Subdivision, Cumming, Forsyth County, Georgia

Lot 23, Wyngate Ivey Subdivision, Alpharetta, Georgia (collectively the "Real Properties").   Copies of the Security Deed and modifications thereto are attached hereto collectively as Exhibit B.

5.

On or about November 13, 2009, Debtor filed its bankruptcy petition under Chapter 7.

6.

Pursuant to the Debtor's schedules filed with this Court, there is little or no equity in the Real Properties.

7.

They are not needed in a reorganization by the Debtor.

8.

BB&T is not adequately protected.   If BB&T is not permitted to foreclose on the Real Properties in accordance with the terms of its security documents, then BB&T will suffer irreparable injury, loss and damage.

WHEREFORE, Branch Banking and Trust Company respectfully prays that upon final consideration of this Motion;

1.   That all stays entered pursuant to 11 U.S.C. §362 be modified to permit Branch Banking and Trust Company to exercise and enforce any and all of its rights under the loan documents and otherwise under applicable law with respect to the Real Properties(without limiting the generality of the foregoing),to proceed with any and all actions as may be appropriate to foreclose on the Real Properties and take possession thereof, to confirm the results of any foreclosure sale and otherwise to exercise its rights under the applicable law; and

2.   That Branch Banking and Trust Company have such other and further relief as this Court deems just and proper.

This the ___31___ day of December, 2009.

_____
Kathleen Horne,
Georgia Bar No. 367456
Attorney for Branch Banking and Trust
Company

INGLESBY, FALLIGANT, HORNE, COURINGTON & CHISHOLM, P.C.
Post Office Box 1368
Savannah, Georgia 31402-1368
(912) 232-7000

# REVOLVING PROMISSORY NOTE

March 09, 2006

**$10,000,000.00**

    **FOR VALUE RECEIVED**, the undersigned (hereinafter called "Borrower"), jointly and severally, promises to pay to the order of **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation (hereinafter called "Bank," which term shall include any holder of this Note), without offset, at the Bank's office located at 1308 Devil's Reach Road, Suite 200, Woodbridge, Virginia 22192 (or at such other address as the Bank shall designate), the principal amount not to exceed at any time outstanding Ten Million and No/100 Dollars ($10,000,000.00), or so much thereof as may be advanced or readvanced and outstanding from time to time, together with interest on the principal balance outstanding from time to time at the rate provided in this Note.

    **REVOLVING LOAN.** The Loan is a revolving loan. Subject to the terms and conditions set forth in the Loan Agreement, amounts advanced and repaid may be readvanced provided that the principal balance outstanding shall not exceed at any time $10,000,000.00.

    **INTEREST RATE.** This Note shall, except as hereinafter provided, bear interest on the principal balance outstanding from time to time, from the date of this Note until paid in full, at a fluctuating per annum rate equal to the Adjusted LIBOR Rate.

Definitions:

    a.    **Adjusted LIBOR Rate** means a rate of interest per annum equal to the sum obtained (rounded upwards, if necessary, to the next higher $1/100^{th}$ of 1.0%) by adding (i) 30-day LIBOR plus (ii) two and three-quarters of one percent (2.75%) per annum, which shall be adjusted monthly on the first day of each month for each LIBOR Interest Period. If the first day of any month falls on date when the Bank is closed, the Adjusted LIBOR Rate shall be determined as of the last preceding business day. The Adjusted LIBOR Rate shall be adjusted for any change in the LIBOR Reserve Percentage so that Bank shall receive the same yield.

    b.    **LIBOR** means the average rate (rounded upward, if necessary, to the next higher $1/100^{th}$ of 1.0%) quoted in the *Wall Street Journal* (Credit Markets Section) or on Bloomberg Screen MMR2 on the determination date for deposits in U.S. Dollars offered in the London interbank market to five major European banks, or if the above method for determining LIBOR shall not be available, a rate determined by a substitute method of determination agreed on by Borrower and Bank; provided, if such agreement is not reached within a reasonable period of time (in Bank's judgment), a rate reasonably determined by Bank in its sole discretion as a rate being paid, as of the determination date, by first class banking organizations (as determined by Bank) in the London interbank market for U.S. Dollar deposits.

BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4



c.    **LIBOR Advance** means any advance made by Bank to Borrower evidenced by this Note upon which the Adjusted LIBOR Rate shall apply.

d.    **LIBOR Interest Period** means a period of one calendar month which shall begin on first day of any month notwithstanding the maturity date of this Note; provided, however, that a LIBOR Interest Period may be less than one calendar month in and only in the calendar months in which the Note originates or matures.

e.    **LIBOR Reserve Percentage** means the maximum aggregate rate at which reserves (including, without limitation, any marginal supplemental or emergency reserves) are required to be maintained under Regulation D by member banks of the Federal Reserve System with respect to dollar funding in the London interbank market. Without limiting the effect of the foregoing, the LIBOR Reserve Percentage shall reflect any other reserves required to be maintained by such member banks by reason of any applicable regulatory change against (i) any category of liability which includes deposits by reference to which the Adjusted LIBOR Rate is to be determined or (ii) any category of extensions of credit or other assets related to LIBOR.

f.    **Standard Advance** means any advance made by Bank to Borrower evidenced by this Note upon which the Standard Rate shall apply.

g.    **Standard Rate** means, for any day, a rate per annum (rounded upwards, if necessary, to the next 1/100th of 1.0%) equal to the Bank's announced Prime Rate per annum, and each change in the Standard Rate shall be effective on the date any change in the Prime Rate is publicly announced as being effective.

h.    **Adjusted LIBOR Based Rate Protections.**

(i)    Inability to Determine Rate.  In the event that Bank shall have determined, which determination shall be final, conclusive and binding, that by reason of circumstances occurring after the date of this Note affecting the London interbank market, adequate and fair means do not exist for ascertaining the LIBOR on the basis provided for in this Note, Bank shall give notice (by telephone confirmed in writing or by telecopy) to Borrower of such determination, whereupon (i) no LIBOR Advance shall be made until Bank notifies Borrower that the circumstances giving rise to such notice no longer exist, and (ii) any request by Borrower for a LIBOR Advance shall be deemed to be a request for a Standard Advance.



BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-2-

(ii)  Illegality; Impracticability.  In the event that Bank shall determine, which determination shall be final, conclusive and binding, that the making, maintaining or continuance of any portion of a LIBOR Advance (i) has become unlawful as a result of compliance by Bank with any law, treaty, government rule, regulation, guideline or order (or would conflict with any of the same not having the force of law even though the failure to comply therewith would not be unlawful) or (ii) has become impracticable, or would cause Bank material hardship, as a result of contingencies occurring after the date of this Note materially and adversely affect the London interbank market or Bank's ability to make LIBOR Advances generally, then, and in any such event, Bank shall give notice (by telephone confirmed in writing or telecopy) to Borrower of such determination.    Thereafter, (x) the obligation of Bank to make any LIBOR Advances or to convert any portion of the loan to a LIBOR Advance shall be suspended until such notice shall be withdrawn by Bank, and (y) any request by Borrower for a LIBOR Advance shall be deemed to be a request for a Standard Advance.

Notwithstanding any other provision of this Note to the contrary, each advance evidenced by this Note shall be a LIBOR Advance unless (h)(i) or (h)(ii) of this "Interest Rate" section of this Note shall apply.  If either (h)(i) or (h)(ii) of this "Interest Rate" section of this Note shall apply, each such advance shall be a Standard Advance.

Any amount of overdue principal which has remained unpaid for fifteen (15) days from its due date, shall bear interest, payable upon demand, for each day after such fifteenth (15th) day to the day paid, at a rate per annum equal to the sum of four percent (4%) plus the otherwise applicable interest rate (the "Default Rate").

Interest shall be computed on the basis of a 360-day year, counting the actual number of days elapsed.

**PAYMENT TERMS.**  The Borrower agrees to pay accrued and unpaid interest under this Note in monthly installments, beginning on April 1, 2006 and continuing on the same day of each consecutive month thereafter until this Note has been paid in full.  All principal, accrued and unpaid interest and other amounts owing under this Note and the other Loan Documents shall be due and payable in full on March 29, 2007 (the "Maturity Date").

**PREPAYMENT.**  The Borrower may pay the whole or any part of the principal balance outstanding under this Note without prepayment fee or premium at any time by paying the principal amount to be prepaid together with accrued interest thereon to the date of prepayment. Any partial prepayment of principal shall not affect the obligation of the Borrower to make subsequent scheduled principal payments (if any) at the times and in the amounts required until this Note is paid in full.



BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-3-

**ADVANCES.** The principal of this Note shall be advanced and readvanced as provided in the Loan Agreement.

**DEFAULT.** Each of the following events or conditions shall, at the Lender's option, constitute a default ("Default") under this Note:

(a)   the failure to make any payment of principal, interest or any other amount due under this Note within five (5) days after the date when such payment is due and payable (whether at maturity, by acceleration or otherwise);

(b)   any default under the terms of any of the Loan Documents, or the failure to perform or observe any warranty, covenant, or other condition of any of the Loan Documents, which is not cured within any applicable grace period provided for therein;

(c)   any default by any Party with respect to any Debt to the Bank (other than this Note), or to any other creditor or obligee which is not cured within any grace period provided with respect thereto in the documents which evidence and/or secure such Debt;

(d)   the death, incompetence, merger, consolidation, reorganization, dissolution, or termination of existence of any Party; or the pledge, lease or other disposition of all or substantially all of the assets of any Party;

(e)   any change, or any transaction which results in a change, in the Control of any Party;

(f)   the determination by the Bank that any warranty, representation, certificate, statement or information provided by any Party or any Person on behalf of a Party to the Bank in connection with any of the Loan Documents, or to induce the Bank to make or extend or modify the terms of the Loan, was false or misleading in any material respect, or that any Party or any Person on behalf of a Party failed to provide or disclose any facts or information, which failure rendered such warranty, representation, certificate, statement or information misleading in any material respect;

(g)   the inability of any Party to pay its debts as they mature, the insolvency of any Party, the filing of a petition by or against any Party under the provisions of any bankruptcy, reorganization, arrangement, insolvency, liquidation or similar law for relief of debtors (if such petition is filed against a Party and not consented to by such Party, then the Party shall have up to ninety (90) days after the filing to cause dismissal with prejudice before a Default shall occur), the appointment or application for appointment of any receiver for any Party or the property of any Party, the issuance or service of any attachment, levy, garnishment, tax lien or similar process against any Party or the property of any Party, the entry of a material judgment against



BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-4-

any Party which is not paid, settled or dismissed with prejudice or appealed with the posting of a full surety bond within thirty (30) days of entry, or any general assignment for the benefit of creditors by any Party;

(h)    any agreement or other document granting the Bank security for the payment of this Note shall cease for any reason to be in full force and effect as such security with the priority stated to be created thereby, or the grantor of such security shall contest the validity or enforceability of the security or deny that it has any further liability or obligation under such agreement or other document;

(i)    any indorsement or guaranty of the payment of this Note shall cease for any reason to be in full force and effect, or any indorser or guarantor shall contest the validity or enforceability of the indorsement or guaranty or deny that it has any further liability or obligation under the indorsement or guaranty; or

(j)    the reasonable determination by the Bank that (i) there has occurred a material adverse change in the financial condition of any Party, (ii) the value of any property securing this Note has been materially impaired, or (iii) there has occurred or developed an event or condition which materially impairs the prospect of payment or performance of any of the obligations of any Party under the Loan Documents and the Borrower has not remedied the same to the reasonable satisfaction of the Bank within twenty (20) days after the Bank gives notice thereof to the Borrower.

**ACCELERATION.**  At the option of the Bank, upon the occurrence of a Default as defined above, the full amount remaining unpaid on this Note shall become immediately due and payable without presentment, demand or notice of any kind; and the Bank may exercise any or all remedies available to it under applicable law and the Loan Documents.

**ACCOUNT RECORD.**  The Bank shall maintain records of the dates and amounts of advances of principal and payments of principal and interest, the date to which interest has been paid, accrued interest, the unpaid principal balance, and any other account information.  Such records shall be maintained unilaterally by the Bank without notice to the Borrower and shall be presumed to be correct, provided, however, any failure of the Bank to maintain such records or any error therein or in any notice hereunder shall not in any manner affect the obligation of the Borrower to pay this Note in accordance with the terms hereof.

**IMMEDIATELY AVAILABLE FUNDS.**  The principal of and interest on this Note shall be payable in immediately available funds in lawful money of the United States which shall be legal tender for public and private debts at the time of payment.  The making of any payment in other than immediately available funds which the Bank, at its option, elects to accept shall be subject to collection, and interest shall continue to accrue until the funds by which payment is made are available to the Bank for its use.

BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-5-

**ADJUSTMENT TO BILLING NOTICE.** If, because a variable interest rate or the outstanding principal balance of this Note changes between the date of a billing notice and the end of a billing period, the actual amount due and payable is different from the amount billed, then the amount billed must be paid. The next following billing notice shall be adjusted by the amount of the difference, or a supplemental billing notice or rebate, as the case may be, shall be sent to the Borrower following the date of maturity. A supplemental billing notice following the date of maturity shall be immediately due and payable in full.

Installment amounts which include interest have been calculated assuming that all payments will be received on the scheduled due dates. If, because such installments are received before or after the due dates, the actual amount of interest due and payable is less or greater than the interest component of such installments, the final billing notice shall be adjusted by the cumulative effect of such differences.

**APPLICATION OF PAYMENTS.** Payments will be applied to interest, late charges, escrow items (if any), principal and other charges due at the time such payments are received, in whatever order the Bank may from time to time select. All payments other than principal prepayments shall be applied to satisfaction of scheduled payments in the order in which they become due. Prepayments applied to principal shall be applied in reverse chronological order.

**WAIVER.** The Borrower and any guarantor or indorser of this Note (i) waive presentment, demand, protest and notice of dishonor and protest, (ii) waive the benefit of their homestead exemptions as to this debt, (iii) waive any right which they may have to require the Bank to proceed against any other Party or any collateral given to secure the payment of this Note, and (iv) agree that, without notice to the Borrower or any indorser and without affecting the liability of the Borrower or any indorser, the Bank, at any time or times, may grant extensions of the time for any payment due on this Note or any other indulgence or forbearance, release any Party from the obligation to make payments on this Note, permit the renewal of this Note, or permit the substitution, exchange or release of any security for this Note.

**LATE CHARGE; ATTORNEYS' FEES.** If the Borrower fails to pay any amount due under this Note within fifteen (15) days of the date due, the Borrower shall pay to the Bank on demand a late charge equal to four percent (4%) of the amount due. The Borrower shall also pay to the Bank on demand all costs incurred by the Bank, and reasonable attorneys' fees actually incurred, in the collection or enforcement of this Note in the event of Default, whether or not suit is brought.

**DEFINITIONS.** The following terms, as used in this Note, have the following meanings:

BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-6-

"Control" of a Person means (i) ownership, control, or power to vote 20% or more of any class of voting securities or membership interests of such Person, directly or indirectly or acting through one or more other Persons; (ii) control in any manner over the election or appointment of a majority of the directors, trustees, managers or general partners (or individuals exercising similar functions) of such Person; (iii) the direct or indirect power to exercise a controlling influence over the management or policies of such Person, whether through the ownership of voting securities or membership interests, by contract, or otherwise; or (iv) conditioning in any manner the transfer of 20% or more of any class of voting securities or membership interests of such Person upon the transfer of 20% or more of any class of voting securities or membership interests of another Person.

"Debt" of any Person means, without duplication, (i) all obligations of such Person for borrowed money, (ii) all obligations of such Person evidenced by bonds, debentures, notes, or other similar instruments, (iii) all obligations of others secured by a lien on any asset of such Person, whether or not any such obligation is assumed by such Person, and (iv) all obligations of others guarantied by such Person.

"Deed to Secure Debt" means the Deed to Secure Debt dated of even date herewith from the Borrower to the Bank, to secure this Note and the other Loan Documents, granting a first lien on certain property which is situated in the State of Georgia and more particularly described in the Deed to Secure Debt, and all renewals, extensions and modifications thereof and substitutions therefor.

"Loan" means the loan evidenced by this Note and secured by the Loan Documents, and all renewals, extensions and modifications thereof and substitutions therefor.

"Loan Agreement" means the Construction Loan Agreement dated of even date herewith between the Bank and the Borrower in connection with the Loan, and all renewals, extensions and modifications thereof and substitutions therefor.

"Loan Documents" means this Note and any other instrument or agreement which now or hereafter evidences, governs, secures or guaranties the Loan or any obligation of the Borrower to the Bank in connection with the issuance of any letter of credit for the account of the Borrower or any other Person, including, without limitation, the Loan Agreement, the Deed to Secure Debt, and any other Deed to Secure Debt, security agreement, letter of credit application, reimbursement agreement and/or guaranty, and all renewals, extensions and modifications thereof and substitutions therefor.

"Party" means the Borrower, any guarantor, any grantor or debtor giving security for this Note, and any other obligor on any of the Loan Documents.



BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-7-



"Person" means an individual, a corporation, a partnership, an association, a limited liability company, a trust or any other entity or organization.

**ADDITIONAL TERMS.**

THE BORROWER IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY SUIT, ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS NOTE, WHETHER SUCH SUIT, ACTION, PROCEEDING, OR COUNTERCLAIM IS INSTITUTED BY THE BANK, THE BORROWER OR ANY OTHER PARTY.

**JURISDICTION.** The Borrower and any guarantor and/or indorser of this Note irrevocably (i) submits to the jurisdiction of any Georgia state court or federal court sitting in the State of Georgia, City of Atlanta, with respect to any suit, action, or proceeding relating to this Note, (ii) waives any objection which it may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum, (iii) waives the right to object that any such court does not have jurisdiction over it, and (iv) consents to the service of process in any such suit, action, or proceeding by the mailing of copies of such process to it by certified mail at the addresses indicated in this Note or at such other addresses of which the Bank shall have received notice. Nothing in this paragraph shall affect the Bank's right to serve process in any other manner permitted by law or to bring proceedings against the Borrower and any indorser or guarantor in any other court having jurisdiction.

**BUSINESS PURPOSE.** The proceeds of this Note shall be used to acquire or carry on a business, professional, investment, or commercial enterprise or activity.

**MISCELLANEOUS.** The rights and remedies of the Bank under this Note, the other Loan Documents, and applicable law shall be cumulative and concurrent, and the exercise of any one or more of them shall not preclude the simultaneous or later exercise by the Bank of any or all such other rights or remedies. In the event any provision of this Note is held to be invalid, illegal, or unenforceable for any reason, then such provision only shall be deemed null and void and shall not affect any other provisions of this Note, which shall remain effective. No modification or waiver of any provision of this Note shall be effective unless it is in writing and signed by the Bank, and any such waiver shall be effective only in the specific instance and for the specific purpose for which it is given. The failure of the Bank to exercise its option to accelerate this Note as provided above, or to exercise any other option, right or remedy, in any one or more instances, or the acceptance by the Bank of partial payments or partial performance, shall not constitute a waiver of any Default, or the right to exercise any option, right or remedy at any time. The nouns, pronouns, and verbs used in this Note shall be construed as being of such number and gender as the context may require.



BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

**APPLICABLE LAW.** This Note shall be governed by and construed in accordance with the laws of the State of Georgia.

[SIGNATURES ON FOLLOWING PAGE]

WITNESS the following signatures and seals:

PARKER-CHANDLER HOMES, INC.
a Georgia corporation

By: _____ (SEAL)
Name: _Christopher Clemente_
Title: _CEO_

APPR.
BY
LEGAL
MW
3/22/6

Borrower's Address:

_11465 Sunset Hills Rd._
_Fifth Floor_
_Reston, VA   20190_

Borrower's Tax ID Number / SSN:

BB&T/Comstock (Parker Chandler)
Revolving Note
#278086v4

-10-